IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN KNIGHT, | : | CIVIL ACTION |
| | : | NO. 07-3097 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID DRYE et al. | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    MARCH 13, 2009

Plaintiff Jonathan Knight ("Knight"), a former police
officer in Chalfont Borough, Bucks County, Pennsylvania,
initiated this lawsuit after he was terminated for allegedly
leaking confidential information about an undercover narcotics
investigation to a local drug dealer.  Knight sued Chalfont
Borough and certain individual defendants,[1] ("Chalfont Borough
Defendants"), the Chalfont Borough Council, the Chalfont Borough
Police Department, the Police Benevolent Association ("PBA"), and
the Fraternal Order of Police ("FOP"), asserting thirteen causes
of action in his amended complaint, for various constitutional,
statutory, and state common law violations.

---

[1]    The individual defendants are Marilyn Becker, Mayor of
Chalfont Borough; Frank Campbell, Chalfont Borough's Police
Chief; David Drye, the former Manager of Chalfont Borough; and
Gary Lucas, President of Chalfont Borough's town council.
Knight's claims against these defendants in their official
capacities were dismissed by the Court on January 4, 2008.  (See
1/4/08 order, doc. no. 36.)

During the course of this litigation, Knight's claims
have been narrowed considerably, as have the pool of Defendants.[2]
Knight's remaining claims are limited to a claim under 42 U.S.C.
§ 1983 ("Section 1983") for First Amendment retaliation against
the Chalfont Borough Defendants and a claim for breach of
contract against the PBA.  Before the Court are the PBA's and the
Chalfont Borough Defendants' respective motions for summary
judgment.  For the reasons that follow, these motions will be
granted.


I.   BACKGROUND[3]

Knight was employed by Chalfont Borough as a police
officer from February 12, 1999 to October 11, 2005.  During this
time, he developed a casual friendship with the manager of a

---

[2]      On January 4, 2008, the Court dismissed Counts II, III,
V, VI, IX, X, XI, and XII of Knight's amended complaint.  (See
1/4/08 order, doc. no. 36.)  The Court also dismissed Knight's
claims against the Chalfont Borough Council and the Chalfont
Borough Police Department, in their entirety.  (Id.)  On February
19, 2009, the Court dismissed Counts IV and VII of the amended
complaint, with prejudice.  (See 2/19/09 order, doc. no. 71.)
Also, to the extent Count VIII of the amended complaint averred
an Equal Protection class-of-one claim, the Court dismissed Count
VIII, with prejudice.  (Id.)  Finally, on February 19, 2009, the
Court granted the FOP's motion for summary judgment on all of
Knight's claims against it.  (See 2/19/09 order, doc. no. 70.)

[3]      In considering the instant motions, the Court relied on
either uncontested facts or, if the facts were disputed, viewed
the facts in the light most favorable to Knight.

local car wash, Whitney Watson, IV.[4]  In January 2005, Watson
approached Knight and informed him that he had "screwed up" by
selling four ounces of marijuana to an undercover agent.
Following this conversation with Watson, it is undisputed that
Knight was informed by the Chief of Police and by a fellow
officer, Robert Milligan, that Watson was the subject of an
ongoing narcotics investigation by the Bensalem Township Police
Department.  It is also undisputed that, armed with this
knowledge, Knight warned Watson that he was "in trouble."[5]  After
receiving Knight's warning, Watson avoided contact with the
undercover agent and the investigation into his drug activity
stalled.  Shortly thereafter, based on tips from an undercover
informant, the police began an inquiry into Knight's role in the
Watson investigation.

On September 23, 2005, the Chalfont Borough Council

---

[4]    The parties dispute the closeness of Knight's
relationship with Watson.  For the purposes of the instant
motions, the Court credits Knight's claim that Watson was merely
his acquaintance.

[5]    See Defs.' Mot. for Summ. J. Ex. 9, doc. no. 53, Knight
Grand Jury Testimony 70:22-70:23.  Defendants contend that
Knight's initial warning to Watson was actually much more
specific - that Knight advised Watson on how to behave if he was
contacted by the undercover agent again and then, several days
later, confirmed to Watson that he was the subject of an ongoing
narcotics investigation.  Defendants allege that, after relaying
this information to Watson, Knight attempted to conceal his
involvement by instructing Watson to lie to investigators if
pressed about his conversations with Knight.  Again, the Court
will adopt Knight's version of the facts.

placed Knight on a temporary paid leave of absence, pending the
criminal investigation into his behavior.  On September 27, 2005,
Knight was arrested and charged with obstructing the
administration of law or governmental function and hindering
prosecution.  That same day, the Chalfont Borough Council
suspended Knight without pay.  On October 11, 2005, the Chalfont
Borough Council unanimously voted to terminate Knight's
employment.  The Chalfont Borough Council based this decision on
its belief that Knight's conduct violated specific provisions of
Chalfont Borough's police duty manual and civil service
regulations.[6]  Knight was acquitted of the criminal charges
against him, but his termination was upheld in an arbitration
decision dated November 19, 2007.  (Defs.' Mot. for Summ. J. Ex.

---

[6]     Specifically, Defendants maintain that Knight violated
Section 8.10 of the Chalfont Borough Police Duty Manual, which
states that "Members and employees shall not reveal police
information outside the department except as provided elsewhere
in this Manual or as required by law or competent authority.
Specifically, information contained within police records, other
information ordinarily accessible only to members and employees,
and names of informants, complainants, witnesses confidential.
Silence shall be employed to safeguard confidential information.
Violation of the security of this type of information reflects
gross misconduct."  (Defs.' Mot. for Summ. J. Ex. 6, doc. no.
53.)

        Defendants also maintain that Knight violated Section
6.1(A)(2) of the Chalfont Borough Civil Service Regulations,
which states that "No person appointed to a position in the
police department pursuant to these Rules may be suspended
without pay or removed and no person promoted in rank pursuant to
these Rules may be reduced in rank except for the following
reasons . . . neglect or violation of any official duty . . . ."
(Id. Ex. 5.)

- 4 -

2, doc. no. 53).[7]

For the purposes of these motions, the Court will accept Knight's additional contentions, that prior to his termination, he made what he now refers to as the "Horn complaint" to the Chief of Police.  Specifically, based on a conversation he had with Watson in mid-February 2005, Knight reported to the Chief of Police that Officer Clifford Horn was "harassing" Watson and his employees.[8]  Knight was told that the Chief would "handle" the matter.  (Pl.'s Aff. ¶¶ 42, 46, 48, doc.

_____

[7]    During the grievance and arbitration proceedings that followed Knight's termination, he was represented by a PBA lawyer, Sean Welby, Esq.  The parties dispute the facts that ultimately caused Mr. Welby to withdraw from the case, but do not dispute that he did, in fact, withdraw from his representation of Knight prior to the merits portion of the arbitration hearing.

[8]    It is worth noting that while Knight characterizes Officer Horn's behavior as "harassment" of Watson and "intentional interference with an ongoing investigation," Defendants explain that Officer Horn was conducting an independent investigation into Watson's drug activities, which ceased upon his learning that the Bensalem narcotics task force was also investigating Watson.

Moreover, the exact nature of the "improper conduct" reported by Knight remains unclear.  From the record, it appears that the "harassment" Knight complained of consisted of Officer Horn issuing a vehicle citation to one of Watson's employees, who had performed a "burnout" with a vehicle in a private parking lot, and perhaps making general inquiries into possible drug activity at the car wash.  (2/19/09 Hr'g Tr. 9:13-9:17.)

Although Knight testified that Watson also mentioned more egregious misconduct by Officer Horn (i.e. that he spied on Watson while wearing camouflage), Knight admitted that he never mentioned these allegations to anyone in his chain of command. (Pl.'s Dep. 93-94.)

no. 63; Pl.'s Dep. 86, 93-94.)

Additionally, before Knight was terminated, he was involved in what he now refers to as the "Drye incident." Specifically, in June 2005, Knight was off duty and patronizing a local bar and restaurant - Soncini's Pub.  Knight witnessed the former manager of Chalfont Borough, David Drye, steal beer from behind the bar and distribute it to other patrons.  After a heated exchange between Matthew Soncini, the pub's owner, and David Drye, Officer Robert Milligan was called to the scene. According to Knight, he was not involved in the official investigation that followed, but he did attempt to break up the fight between Soncini and Drye before the police arrived.

## II.  LEGAL STANDARD

### A.  <u>Motion for Summary Judgment under Rule 56</u>

A court may grant summary judgment when "the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in

favor of the non-moving party regarding the existence of that
fact.  Id. at 248-49.  "In considering the evidence, the court
should draw all reasonable inferences against the moving party."
El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).
However, while the moving party bears the initial burden of
showing the absence of a genuine issue of material fact, the non-
moving party "may not rely merely on allegations or denials in
its own pleading; rather its response must - by affidavits or as
otherwise provided in [Rule 56] - set out specific facts showing
a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).


    B.   Section 1983

        Section 1983 of Title 42 of the United States Code
provides a cause of action for an individual whose constitutional
or federal rights are violated by those acting under color of
state law.[9]  See generally Gonzaga Univ. v. Doe, 536 U.S. 273,
284-85 (2002) (recognizing that Section 1983 provides a remedy
for violations of individual rights "secured by the Constitution
and laws" of the United States).

---

        [9]    "Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State or
Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other person
within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress . . . ."  42
U.S.C. § 1983.

III. DISCUSSION

A.   The PBA'S Motion for Summary Judgment

_____Count XIII of Knight's amended complaint contains a

breach of contract claim against the PBA, which the parties have

construed as alleging a breach of the duty of fair representation

under Pennsylvania common law.  (See PBA's Mot. for Summ. J. at

15, doc. no. 51.)  Specifically, Knight alleges that the PBA (1)

improperly terminated his union membership; and (2) breached its

duty of fair representation to him.  Also, Knight seeks the

return of certain firearms that were seized from him.

The only remaining issue is whether the PBA breached

its duty of fair representation to Knight.[10]  "When a labor

organization has been selected as the exclusive representative of

the employees in a bargaining unit, it has a duty . . . to

represent all members fairly."  Marquez v. Screen Actors Guild,

Inc., 525 U.S. 33, 44 (1998).  To constitute a breach of its duty

of fair representation, the PBA's conduct must be "arbitrary,

discriminatory, or in bad faith."  Id. at 44.  These standards

are not easily met.  Rather, "[a] union's actions are arbitrary

_____

[10]   During his deposition, Knight clarified that his
allegation of improper termination from "the union" applied only
to the FOP, which is no longer a Defendant in this case.  (Pl.'s
Dep. 176.)  Knight also acknowledged that the firearms at issue
were seized by the Bucks County District Attorney's office and
supposedly returned to him via courier on or around September 9,
2006.  Although Knight maintains that he has not received the
firearms and has no knowledge of their whereabouts, he does not
suggest that the PBA possesses the firearms.  (Id. 212-213.)

only if 'in light of the factual and legal landscape' they are 'so far outside the range of reasonableness as to be irrational.'" Albright v. Virtue, 320 F. Supp. 2d 276, 283 (M.D. Pa. 2003) (quoting Air Line Pilots v. O'Neill, 499 U.S. 65, 67 (1991)); see also Gearhart v. Am. Fed'n of State, County & Mun. Employees, No. 72 M.D.1998, 2004 WL 1293261, *3 (Pa. Cmwlth. Apr. 7, 2004) ("A breach of duty of fair representation is established where bad faith on the part of the union is shown.")  Moreover, "[p]oor judgment on the part of the union, even that which rises to the level of negligence, is insufficient to support a claim of unfair representation." Albright, 320 F. Supp. 2d at 283 (citing Bazarte v. United Transp. Union, 429 F.2d 868, 872 (3d Cir. 1970)).[11]

In his amended complaint, Knight avers that "the union, after agreeing to represent the plaintiff, terminated the representation of him in such a period of time that deny [sic] and prejudices his rights to fair representation." (Compl. ¶ 209, doc. no. 14.)  Knight argues that this was an "irrational . . . change in strategy," (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 7, doc. no. 61), which occurred "on the eve of trial" and that

---

[11]     Although there does not appear to be a Pennsylvania Supreme Court case explicitly adopting federal jurisprudence with respect to duty of fair representation cases in the context of public employment, the parties here do not dispute that Pennsylvania state courts apply the federal "arbitrary, discriminatory, or in bad faith" standard to these claims.  (See 2/19/09 Hr'g Tr. 24:13-26:11 (discussing legal standard).)

was tantamount to "blackmail."  (2/19/09 Hr'g Tr. 39:8, 39:11.)

         The PBA maintains that its decision to discontinue
payment for Knight's legal representation was neither arbitrary,
discriminatory, nor in bad faith.  Rather, the PBA argues that
its decision was consistent with its fiduciary obligations to
Knight and to other union members.  Specifically, the PBA notes
that it retained Sean Welby, Esq., to represent Knight during his
initial termination grievance proceedings.  When the parties
failed to reach a resolution, Knight's grievance was submitted to
arbitration.  Mr. Welby continued to represent Knight,
successfully navigating a one-day hearing to overcome Chalfont
Borough's challenge to the arbitrability of Knight's grievance.
Shortly thereafter, before a hearing on the merits, Chalfont
Borough offered to settle with Knight on favorable terms - i.e.
reinstatement of his position as a Chalfont Borough police
officer, full back pay, full seniority, and full benefits - in
exchange for a release from future lawsuits.  (See 2/19/09 Hr'g
Tr. 18:8-19:8.)  On the advice of his privately retained
attorney, Brian Wiley, Esq., Knight declined to accept Chalfont
Borough's settlement offer.[12]  (See PBA's Mot. for Summ. J. at 5-
7, doc. no. 51.)  Mr. Wiley represented Knight during the merits

_____

         [12]    During his deposition, Knight explained that he could
not afford to take the settlement offer because of the
substantial legal fees he already owed Mr. Wiley and because it
would have required him to give up any future civil suit against
Chalfont Borough.  (Pl.'s Dep. 169-170.)

portion of the arbitration hearing, which he lost.  There was no appeal.  (Id. at 12.)

The PBA notes that it informed Knight in advance that his decision to reject Chalfont Borough's settlement offer would result in Mr. Welby's withdrawal from the case because "[t]he offer from the Borough to reinstate Plaintiff to full duty with back pay and no loss of seniority was the equivalent of the PBA having won the case; there was no other benefit that the PBA could have obtained for Plaintiff while remaining within the parameters of its fiduciary responsibility to all members of the union, who have a right not to have their resources diminished pursuing the purely personal goals of one member."  (Id. at 17-18; 2/19/09 Hr'g Tr. 19:17-20:10 (noting that the arbitrator could not have awarded Knight punitive damages, or damages for any First Amendment violations)).  See Bazarte, 429 F.2d at 871 ("[C]ollective bargaining representatives . . . are required to serve the interest of all members without hostility or discrimination toward any . . . .")

Knight does not substantively dispute the PBA's version of the facts and relies only on his own affidavit to support his claim that Mr. Welby's withdrawal from his representation was somehow "irrational."  (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 7, doc. no. 61.)  Indeed, there appears to be no other record evidence to support that the PBA acted in bad faith or in a way

that was arbitrary or discriminatory.  Rather, the record
supports that the PBA faithfully represented Knight until he
decided to reject a favorable settlement offer to preserve his
private law suit.[13]  Thus, to the extent that Knight's claim
against the PBA is based on Mr. Welby's withdrawal as counsel
during the arbitration proceedings, the PBA is entitled to
summary judgment.  See Smiley v. Daimler Chrysler and UAW Local
1183, 589 F. Supp. 2d 471, 488 (D. Del. 2008) (granting summary
judgment for defendant on plaintiff's breach of the duty of fair
representation claim where defendant union refused to submit
plaintiff's grievance to arbitration because plaintiff rejected
offer of reinstatement).

    Alternatively, Knight argues that the PBA's conduct in
two other instances constituted a breach of its duty of fair
representation.[14]  First, Knight suggests that, prior to his

---

[13]    Moreover, even after Mr. Welby withdrew as Knight's
counsel, the PBA offered to provide Knight with a union
representative during the merits portion of the arbitration, and
paid the union's full share of the approximately $11,000
arbitration bill.  (PBA's Mot. for Summ. J. at 18, doc. no. 51;
2/19/09 Hr'g Tr. 26:19-27:5.)

[14]    These two additional allegations are not in Knight's
amended complaint but were relied upon by Plaintiff's counsel
during oral argument.  Also, in his response to the PBA's motion
for summary judgment, Knight argued that the PBA "intentionally
misled" him regarding his right to "fight for his job" using a
Section 1983 action and his right to non-arbitration damages.
(See Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6, doc. no. 61.)
Because this claim is not in the amended complaint and was not
addressed by the parties during oral argument, the Court will not

final termination on October 11, 2005, the PBA breached its duty
of fair representation by withholding "crucial evidence" from the
Chalfont Borough Council, which, if disclosed, would have
resulted in his reinstatement.  (Pl.'s Resp. to Def.'s Mot. for
Summ. J. at 6, doc. no. 61.)   While not entirely clear, it
appears that Knight is suggesting that had the PBA informed the
Chalfont Borough Council of his internal complaint against
Officer Horn, he never would have been terminated.  (Id. (arguing
that "similarly situated Officer Clifford Horn . . . committed
more serious infractions than Plaintiff").)  Second, Knight
suggests that the arbitration testimony of the PBA's president,
Officer Robert Milligan, somehow constituted a breach of the
union's duty of fair representation.  (See 2/19/09 Hr'g Tr.
53:16-54:17 (suggesting that Officer Milligan withheld
"exculpatory information that . . . would have prevented Officer
Knight's termination").)

        These facts, even viewed in the light most favorable to
Knight, cannot constitute a breach of the PBA's duty of fair
representation.  First, regardless of the PBA's conduct prior to
Knight's October 11, 2005 termination, the PBA took the matter to
arbitration on behalf of Knight.  See Maskin v. United Steel
Workers of Am., 136 F. Supp. 2d 375, 381 (W.D. Pa. 2000) ("A
cause of action for the breach of the duty of fair representation

consider it here.

accrues at the point where the grievance procedure has been exhausted or otherwise breaks down to the employee's disadvantage.")  Therefore, there was no harm to Knight for the alleged breach by the PBA.

Second, Knight's allegations of impropriety by Officer Milligan are vague, and cannot be confirmed by the record.  To that effect, Knight relies primarily on his own affidavit in support of his claims and, to the extent that he relies on other record evidence, it does not clearly support his position.  For example, Knight suggested that Officer Robert Milligan, his "union competitor," retaliated against him after Knight's successful election as a union officer by attempting to have him arrested.  (Pl.'s Aff. ¶ 13, doc. no. 63.)  However, the only support Knight offers for Milligan's alleged "retaliatory animus" is Milligan's position as president of the PBA, a position once held by Knight. (See, e.g., Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 28, Milligan Dep. 15:13-15:18 ("Q: At one time Officer Knight was the president of the PBA? / A: Correct. / Q: You're the president of the PBA now? / A: Correct").)

Under these circumstances, Knight has failed to show the existence of a genuine issue of material fact.  See Maskin, 136 F. Supp. 2d at 382 (finding plaintiff's "insinuation" of hostility on the part of a union representative insufficient to establish a breach of the duty of fair representation because

"[t]he finding of animosity on the part of a union representative alone does not constitute a breach of the duty of fair representation").[15]   Thus, the PBA is entitled to summary judgment on Count XIII of Knight's amended complaint.

> B.    The Chalfont Borough Defendants' Motion for Summary Judgment

Count I of Knight's amended complaint contains a Section 1983 First Amendment retaliation claim against the Chalfont Borough Defendants.   Knight avers that he engaged in protected activity by (1) reporting Officer Horn's alleged interference in the Watson drug investigation; and (2) reporting the alleged "wrongdoing" of Defendant David Drye.   (Compl. ¶ 123, doc. no. 14.)   Knight claims that the Chalfont Borough Defendants terminated him in retaliation for this protected speech.   (Id. ¶ 132.)

The Court's analysis of Knight's First Amendment retaliation claim is governed by the Supreme Court's decision in Garcetti v. Ceballos, 547 U.S. 410 (2006), and related Third Circuit jurisprudence.   The Garcetti court held that "when public employees make statements pursuant to their official duties, the

---

[15]    Further, the Court notes that the Chalfont Borough PBA consists of approximately "four or five" police officers. (2/19/09 Hr'g Tr. 21:14-21:15.)   Given the limited number of union members, the fact that both Knight and Officer Milligan held the position of president at some point is even less suspect.

employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[16] <u>Id.</u> at 421. Following <u>Garcetti</u>, the Third Circuit has held that "[a] public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made . . . ." <u>Reilly v. City of Atlantic City</u>, 532 F.3d 216, 228 (3d Cir. 2008) (quoting <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 241-42 (3d Cir. 2006)).

Under <u>Garcetti</u> and its progeny, the threshold question is whether Knight's reports of alleged misconduct by Officer Horn or David Drye were made in his capacity as a private citizen, or pursuant to his official duties as a police officer. <u>See Foraker v. Chaffinch</u>, 501 F.3d 231, 243 (3d Cir. 2007) ("Because we agree with the District Court that [plaintiff state troopers] were acting pursuant to their job duties when they made their complaints up the chain of command . . . we need not examine whether their speech passes the remainder of the test . . . .");

---

[16]    In so holding, the <u>Garcetti</u> court refined the First Amendment analysis set forth in <u>Pickering v. Board of Ed. of Twp. High School Dist. 205, Will Cty.</u>, 391 U.S. 563 (1968).

see also id. ("'Garcetti requires that before analyzing whether
an employee's speech is of public concern, a court must determine
whether the employee was speaking 'as a citizen' or, by contrast,
pursuant to his duties as a public employee.'" (quoting Sigsworth
v. City of Aurora, 487 F.3d 506, 509-10 (7th Cir. 2007))).
Moreover, "whether a particular incident of speech is made within
a particular plaintiff's job duties is a mixed question of fact
and law."  Foraker, 501 F.3d at 240.

As an initial matter, Defendants argue that Knight's
involvement in the "Drye incident," does not constitute protected
speech.  It is undisputed that although Knight claims to have
witnessed David Drye steal beer from a local bar, he never
reported this incident.  In fact, during his deposition Knight
admitted that he never reported Drye's conduct to the Chief of
Police, to the Mayor, to any employee or agent of Chalfont
Borough, or to anyone on the Chalfont Borough Council.  (Pl.'s
Dep. 113, 121.)[17]  Because Knight's mere presence at the scene of
an alleged theft does not constitute speech, the "Drye incident"
cannot form the basis of his First Amendment retaliation claim.
See Fogarty v. Boles, 121 F.3d 886, 891 (3d Cir. 1997)

---

[17]     Additionally, Matthew Soncini testified during his
deposition that Knight refused to involve himself in Soncini's
complaints to Chalfont Borough officials regarding the "Drye
incident" because Knight was off duty at the time it occurred.
(Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 29, Soncini Dep. 37,
39.)

(concluding that "the absence of speech - in fact, its explicit disclaimer by plaintiff - is fatal to the plaintiff's claim"); Ambrose v. Twp. of Robinson, Pa., 303 F.3d 488, 495 (3d Cir. 2002) ("Plaintiffs in First Amendment retaliation cases can sustain their burden of proof only if their conduct was constitutionally protected, and, therefore, only if there actually was conduct.")

Turning to the "Horn complaint," Defendants argue that Knight's report to the Chief of Police regarding a fellow officer's alleged misconduct cannot constitute protected speech because any such report was necessarily made pursuant to his official duties as a police officer.  See Kline v. Valentic, No. 07-2579, 2008 WL 2435579, at *2 (3d Cir. June 17, 2008) (concluding that plaintiff did not speak as a citizen when he "complained up the chain of command and not in any public forum about allegedly false statements made during an investigation into his own conduct as a police officer"); Skrutski v. Marut, No. 07-2828, 07-2848, 2008 WL 2787434, at * 3 (3d Cir. July 18, 2008) (finding that "none of [Plaintiff's] statements can serve as the predicate for a viable First Amendment retaliation claim" because they were all made "within his direct chain-of-command"); Lyons v. Mentzer, No. 08-94, 2008 WL 4444272, at 3-4 (E.D. Pa. Oct. 2, 2008) (finding that Plaintiff's "complaints to superiors, up the chain of command" regarding "fellow officers' misconduct

in performing their duties" were made "pursuant to employment
responsibilities under Garcetti").

       Rather than argue that Knight made the "Horn complaint"
in his capacity as a private citizen, Plaintiff's counsel
contends that a recent Third Circuit decision, Reilly v. City of
Atlantic City, 532 F.3d 216 (3d Cir. 2008), "has expanded and
really eliminated the question for police officers of whether or
not the speech or the conduct is private versus public. Reilly
says it doesn't matter anymore." (2/19/09 Hr'g Tr. 62:18-21.)
After carefully considering the Third Circuit's decision in
Reilly, as well as the parties' supplemental briefs on this
issue, the Court disagrees with Knight's broad interpretation of
Reilly. (See Defs.' Supp. Br., doc. no. 72; Pl.'s Resp. to
Defs.' Supp. Br., doc. no. 76.)

       The Reilly court, applying the Supreme Court's
rationale in Garcetti, held that a police officer's truthful
testimony in court constituted "citizen speech," which fell
within the purview of First Amendment protection. Reilly, 532
F.3d at 231. In fact, the Reilly court explicitly noted that its
analysis of "Garcetti in the context of this appeal is limited to
the question whether Reilly spoke as a citizen when he testified
at the Munoz trial." Id. at 228 (emphasis added). The Reilly
court did not, as Plaintiff's counsel contends, expand "the
protection of the First Amendment for cops" so that it includes

- 19 -

speech made pursuant to an officer's official duties.  (2/19/09
Hr'g Tr. 58:14-25; Pl.'s Resp. to Defs.' Supp. Br., doc. no. 76
("In Reilly, our circuit ruled that even actions taken pursuant
to an officer's 'official duties' are protected."))  Thus,
because Knight's complaint to his superior regarding a fellow
officer's alleged misconduct does not constitute "citizen speech"
under Garcetti, and because the Third Circuit's decision in
Reilly did not expand the protection of the First Amendment for
police officers,[18] the Chalfont Borough Defendants are entitled
to summary judgment on Count I of Knight's amended complaint.[19]

---

[18]   During oral argument, Plaintiff's counsel made it clear
that his First Amendment retaliation claim with respect to the
"Horn complaint" hinged on the Court adopting his interpretation
of Reilly.  (2/19/09 Hr'g Tr. 63:3-5.)

[19]   Although not mentioned in Count I of the amended
complaint or in his papers, Knight testified to several other
instances of alleged misconduct by Officer Horn during his
deposition.  For the sake of completeness, these are discussed
below.

    On August 7, 2002, Knight wrote an "officer in charge
report," addressed to the Mayor, in which he reported that
Officer Horn "neglected his duties, failed to patrol his beat,
and disobeyed a direct order."  (Pl.'s Resp. to Defs.' Mot. for
Summ. J. Ex. 23.)  During his deposition, Knight admitted that
this report was written during the "course and scope of [his]
duties as a police officer."  (Pl.'s Dep. 48.)  Thus, under
Garcetti, this report cannot form the basis of Knight's Section
1983 First Amendment retaliation claim.

    Knight testified that in 2004, he complained to Chief
Campbell that Officer Horn improperly permitted his friend, Chris
Komatic, to remain inside the police station for extended periods
of time.  (Pl.'s Dep. 50.)  According to Knight, he objected to
Komatic's presence in the station because he believed that it
posed a risk to "the integrity of the evidence in the police

Count VIII of the amended complaint raises additional grounds for Knight's First Amendment retaliation claim.[20] However, to the extent that Count VIII of the amended complaint alleges a Section 1983 First Amendment retaliation claim for Knight's "participation in federally protected activities like the 'Watson' investigation", it would fail for the same reasons discussed above.  (Compl. ¶ 173, doc. no. 14.)  Namely, Knight's complaint to the Chief of Police regarding Officer Horn's alleged

---

station, the integrity of the victims and information on the computer."  (Id. at 51-52.)  Although not addressed in Knight's papers or during oral argument, under the analysis above, it would appear that Knight made this complaint pursuant to his official duty as a police officer.

Knight testified that there was a rumor that Officer Horn played "hide and go seek in the borough with vehicles and Chris Komatic."  (Pl.'s Dep. 55.)  Knight also testified that he never reported this to anyone because he had "no proof."  (Id. at 56-57.)

Knight testified that Officer Horn improperly allowed Chris Komatic to observe him making DUI arrests.  (Pl.'s Dep. 55.)  Knight also testified that he never reported this to anyone because he had "no proof," although he did discuss it with a fellow officer.  (Id. at 56-57.)

Knight testified that in late 2004 or early 2005, Officer Horn warned two underage boys to leave a party at which there was alcohol, allowing them to avoid arrest.  (Pl.'s Dep. 73-74.)  Knight also testified that he never reported this to anyone.  (Id. at 75.)

[20]  During a January 3, 2008 motion to dismiss hearing, the Court noted that Count VIII of Knight's amended complaint appears to be a "hybrid" of First Amendment and Equal Protection claims.  (1/3/08 Hr'g Tr. 23:9-15.)  To the extent that Count VIII alleged an Equal Protection class-of-one claim, that claim was dismissed with prejudice on February 19, 2009.  (See 2/19/09 order, doc. no. 71.)

interference in the Watson investigation was not protected
speech.[21]

 To the extent that Count VIII alleges a Section 1983
First Amendment retaliation claim for Knight's "arbitration," it
would also fail.  (Compl. ¶ 173, doc. no. 14.)  It is undisputed
that Knight was terminated <u>before</u> any demand for arbitration was
made.  Therefore, his termination could not be in retaliation for
"arbitration."  (<u>See</u> Defs.' Mot. for Summ. J. 31 n.1; 2/19/09
Hr'g Tr. 13:4-12.)  Therefore, the Chalfont Borough Defendants
are also entitled to summary judgment on Count VIII of Knight's
amended complaint.


IV. CONCLUSION

 For these reasons, Defendants' motions for summary
judgment shall be granted.  An appropriate order will issue.

---

  [21] During his deposition, Knight testified that he did not
otherwise participate in the investigation into Watson's drug
activities.  (Pl.'s Dep. 94.)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JONATHAN KNIGHT,           :     CIVIL ACTION
                           :     NO. 07-3097
          Plaintiff,       :
                           :
          v.               :
                           :
DAVID DRYE et al.          :
                           :
          Defendants.      :

**O R D E R**

**AND NOW**, this **13th** day of **March 2009**, upon

consideration of Defendants' motions for summary judgment (doc.

nos. 50 & 53), and Plaintiff's responses thereto, it is hereby

**ORDERED** that Defendants' motions are **GRANTED.**[1]

**IT IS FURTHER ORDERED** that the case shall be marked

**CLOSED.**

**AND IT IS SO ORDERED.**

          S/Eduardo C. Robreno
          **EDUARDO C. ROBRENO, J.**

---

[1]      The Court previously dismissed Counts II, III, V, VI,
IX, X, XI, and XII of the amended complaint (see 1/4/08 order,
doc. no. 36), and Counts IV and VII of the amended complaint,
with prejudice (see 2/19/09 order, doc. no. 71).  The Court also
previously dismissed part of Count VIII with prejudice, but only
to the extent that it alleged an Equal Protection class-of-one
claim.  (Id.)  This order addresses all of Knight's remaining
claims, and brings this matter to a close.  See Appendix A,
attached.