```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JONATHAN KNIGHT,              :    CIVIL ACTION
                              :    NO. 07-3097
        Plaintiff,            :
                              :
        v.                    :
                              :
DAVID DRYE et al.,            :
                              :
        Defendants.           :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        SEPTEMBER 9, 2009


I.   BACKGROUND

Plaintiff Jonathan Knight ("Knight"), a former police officer in Chalfont Borough, Bucks County, Pennsylvania, initiated this lawsuit after he was terminated for allegedly leaking confidential information about an undercover narcotics investigation to a local drug dealer.  Knight sued Chalfont Borough and certain individual defendants,[1] ("Chalfont Borough Defendants"), the Chalfont Borough Council, the Chalfont Borough Police Department, the Police Benevolent Association ("PBA"), and the Fraternal Order of Police ("FOP"), asserting thirteen causes of action in his amended complaint, for various constitutional,

---

[1] The individual defendants were Marilyn Becker, Mayor of Chalfont Borough; Frank Campbell, Chalfont Borough's Police Chief; David Drye, the former Manager of Chalfont Borough; and Gary Lucas, President of Chalfont Borough's town council. Knight's claims against these defendants in their official capacities were dismissed by the Court on January 4, 2008.  (See 1/4/08 order, doc. no. 36.)

statutory, and state common law violations.[2]

During the course of this litigation, Knight's claims and the pool of Defendants were narrowed considerably. Most recently, on February 19, 2009, the Court granted the FOP's motion for summary judgment (2/19/09 order, doc. no. 70). On March 13, 2009, the Court granted the summary judgment motions of the Chalfont Borough Defendants and the PBA (3/13/09 Memorandum and Order, doc. no. 77). This case was then marked closed.

Knight appealed this Court's March 13, 2009 decision to the Third Circuit Court of Appeals, but only with respect to the Chalfont Borough Defendants. That appeal is pending. In the meantime, the PBA and FOP have both filed motions seeking attorneys' fees under 42 U.S.C. § 1988(b) ("Section 1988"), which permits the prevailing party to petition the Court for attorneys' fees in actions alleging a violation of 42 U.S.C. § 1985 ("Section 1985"). The Court heard oral argument on Defendants' motions on September 4, 2009. Now, for the reasons that follow, Defendants' motions will be granted.

II. LEGAL STANDARD

Section 1985(b) of Title 42 of the United States Code provides that "[i]n any action or proceeding to enforce a

---

[2] See 3/13/09 Memorandum and Order, Appendix A, doc. no. 77 (summarizing disposition of Knight's 13 claims).

provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."

"The 'prevailing party' can be either the plaintiff or the defendant but the standard for awarding attorney's fees to prevailing defendants is more stringent than that for awarding fees to prevailing plaintiffs." Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151, 157-58 (3d Cir. 2001). In fact, "a prevailing defendant is entitled to attorney's fees only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation . . . .'" Id. at 158 (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)); see also EEOC v. L.B. Foster Co., 123 F.3d 746, 750 (3d Cir. 1997) ("'[F]rivolous, unreasonable, or without foundation,' in this context, implies 'groundless . . . rather than simply that the plaintiff has ultimately lost his case.'" (quoting Christiansburg Garment Co., 434 U.S. at 421)).[3] Importantly, "it

---

[3] During oral argument, Plaintiff's counsel argued that "[i]n order to award attorney's fees, under Section 1988, the defendants have to do more, thank goodness, than I have to do. They have to show something in the record that means Mr. Wiley pursued this course of conduct when it was clear it wasn't." (9/4/09 Hr'g Tr. 20:12-16.) Viewed in context, it is clear that Plaintiff's counsel was arguing that the Supreme Court's holding in Christiansburg prohibits an award of attorneys' fees to prevailing defendants unless Plaintiff's conduct was "vexatious." (See id. 18:19-19:7.) This is not the case.

is not necessary that the prevailing defendant establish the plaintiff had subjective bad faith in bringing the action in order to recover attorney's fees. Rather the relevant standard is objective." Barnes Found., 242 F.3d at 158.

Determinations regarding the frivolity of plaintiff's claim should be made on a case-by-case basis. See id. (relying upon Sullivan v. School Bd., 773 F.2d 1182, 1189 (11th Cir. 1983)). In previous cases, the Third Circuit has relied on the following non-exclusive factors to determine whether a plaintiff's unsuccessful civil rights claim was frivolous: "whether the plaintiff established a prima facie case, the defendant offered to settle, the trial court dismissed the case prior to trial or the case continued until a trial on the merits." Id. (relying upon L.B. Foster Co., 123 F.3d at 750). Similarly, other courts have considered whether "the issue was one of first impression requiring judicial resolution, [or whether] the controversy is based sufficiently upon a real threat of injury to the plaintiff." Id. (relying upon Unity Ventures v.

---

Although the Christiansburg court did mention vexatious conduct as a factor to be weighed by a court assessing attorneys' fees under Section 1988, it did not hold that such conduct was required. See Christiansburg Garment Co., 434 U.S. at 421 (noting with approval that the Second Circuit had upheld a fee award to a successful defendant where it found that "such awards should be permitted 'not routinely, not simply because he succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious'" (quoting Carrion v. Yeshiva Univ., 535 F.2d 722, 727 (2d Cir. 1976) (emphasis added))).

County of Lake, 894 F.2d 250, 253-54 (7th Cir. 1995)).

If the Court determines that an award of attorneys' fees to the prevailing party is appropriate, it must then calculate the amount of the fee award. "In calculating a fee award under the usual 'lodestar method,' a district court uses as a starting point the product of the attorney's appropriate hourly rate and the number of hours the attorney reasonably expended on the action." McCutcheon v. America's Servicing Co., 560 F.3d 143, 150 (3d Cir. 2009) (quoting Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005)).[4] The Third Circuit has noted that "[t]he product is presumptively a reasonable fee, but it may still require subsequent adjustment." United Auto. Workers Local 259 Social Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 290 (3d Cir. 2007).[5]  Indeed,

---

[4] The Court notes that while not all of the cases cited herein address Section 1988 claims, "case law construing what is a 'reasonable' fee applies uniformly" to multiple federal fee shifting statutes. City of Burlington v. Dague, 505 U.S. 557, 562 (1992) (noting that Section 1988, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 7604(d) share similar language and that case law interpreting one is equally applicable to "all of them").

[5] "In an attorneys' fees determination, once a prevailing party has produced 'sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case[,] . . . the opposing party bears the burden of producing record evidence that will contest this rate.'" McCutcheon, 506 F.3d at 150 (quoting Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001)); see also Hughes v. Repko, 578 F.2d 483, 487 (3d Cir. 1978) ("The burden of persuasion must rest on the petitioner to demonstrate to the court the number of hours attributable to the successful claim, and also to demonstrate that the number of

"[h]ours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990); see also Hensley v. Eckerhart, 461 U.S. 424, 436 (1983) ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" (citation omitted)).  However, in making an adjustment, "[t]he district court cannot decrease a fee award based on factors not raised at all by the adverse party." McCutcheon, 506 F.3d at 150 (quoting Rode, 892 F.2d at 1183).

"Once a lodestar calculation has been reached, a court may then reduce that amount to account for 'limited success' by" the prevailing party. Id. at 151.  Indeed, the Supreme Court has held that, when determining the reasonableness of fees under Section 1988, "the most critical factor is the degree of success obtained." Hensley, 461 U.S. at 436.  Recently, the Third Circuit held that "the language of § 1988(b) seems to be sufficiently broad to endorse the inclusion of state claims in the consideration of overall success." Jama v. Esmor Correctional Servs. Inc., — F.3d —, No. 08-2500, 2009 WL 2449604, at *6 (3d Cir. Aug. 12, 2009).  Further, the Jama court noted

---

hours so attributable was reasonably necessary to perform the work at issue.")

    Here, Defendants have submitted an affidavit from a labor lawyer in the Philadelphia area whose rate is $300 per hour. (See Kohn Aff., doc. no. 79.)  Plaintiff did not contest the reasonableness of this rate.

that "[w]hile identity between the claims is not required, the state and federal claims must certainly bear some relation in order for the state claim to be considered under § 1988." Id. at *8.  Specifically, the state and federal claims must involve a "'common core of facts'" or be based on "'related legal theories'" for the pendant state claims to "inform the degree of [the prevailing party's] overall success for the purposes of § 1988."  Id. (quoting Hensley, 461 U.S. at 435).

III. DISCUSSION

    A.   <u>Frivolity</u>

Defendant PBA has moved for an award of attorneys' fees in the amount of $11,868.75, reflecting 52.75 hours worked at $225 per hour.  (PBA's Mot., doc. no. 79.)  Similarly, Defendant FOP has moved for an award of attorneys' fees in the amount of $7,860, reflecting 26.2 hours worked at $300 per hour.  (FOP's Mot., doc. no. 84.)  Defendant FOP relies on Defendant PBA's brief in support of its motion.

Both Defendants seek an award of fees for time spent defending against Counts VI, XI, XII and XIII of Plaintiff's complaint,[6] up to and including the hearing on Defendants' motion

---

[6] Counts VI, XI, and XII were all dismissed on January 4, 2008 (1/4/08 order, doc. no. 36).  Count XIII, which alleged a breach of contract by the PBA and the FOP, survived Defendants' motions to dismiss.  Count XIII was disposed of by the Court in its February 19, 2009 and March 13, 2009 orders granting

to dismiss Plaintiff's amended complaint, which was held on January 3, 2008. Defendants do not seek an award of fees incurred after January 3, 2008.

The Court's analysis must necessarily begin with a determination of whether Count VI of Plaintiff's amended complaint, the only federal claim averred against Defendants PBA and FOP, was "frivolous, unreasonable, or without foundation." In Count VI of his complaint, Plaintiff purported to state a claim under Section 1985. Specifically, Count VI averred that the PBA and the FOP "acted in concert" with other defendants "by wrongfully denying [Plaintiff] the right to arbitrate his claim without fear of loss of additional rights." (Amended Compl. ¶ 162, doc. no. 14.)

Section 1985 provides a cause of action if "(1) two or more persons conspire to deprive any person of the equal protection of the law; (2) one or more of the conspirators performs or causes to be performed any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States." Barnes Found., 242 F.3d at 162. Further, the Supreme Court has held that a Section 1985 plaintiff must aver "some racial, or perhaps

---

Defendants FOP's and PBA's motions for summary judgment. (2/19/09 order, doc. no. 70; 3/13/09 order, doc. no. 77.)

otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).

Defendants argue that Plaintiff's allegations of a Section 1985 conspiracy were baseless because they lacked the required specificity, and because there were no facts alleged to suggest that Defendants acted with racial, or class-based discriminatory animus. Indeed, the Court's January 4, 2008 order dismissing Count VI of Plaintiff's amended complaint cited the Supreme Court's decision in Griffin as the basis for its dismissal. (See 1/4/08 order, doc. no. 36.)

Plaintiff argues that his Section 1985 claim was not "frivolous, meritless or vexatious" because, during oral argument on Defendants' motions to dismiss, he "adduced specific communications regarding his termination in which both the Police Benevolent Association and Fraternal Order of Police were jointly contacted and communicated." (Pl.'s Resp. at 5, doc. no. 82.) Additionally, Plaintiff points to the fact that the Defendants "did not have to defend an appeal (or reconsideration of the Court's dismissal of the § 1985 Count.)" (Id. at 6.) Plaintiff's response does not address the fact that his complaint failed to allege any racial, or class based discriminatory animus by Defendants. During oral argument, however, Plaintiff's counsel argued that Defendants conspired against Plaintiff because "he

was in a protected class.  Prior to Olick,[7] which was being decided at the same time, Mr. Knight was being subjected to this treatment, Government employees were considered a protected class.  So, I was trying to get the Court to accept a novel position . . . ."  (9/4/09 Hr'g Tr. 17:19-24.)  Given that Plaintiff's response to Defendants' motion to dismiss does not address this issue at all, this hindsight argument is unavailing and unsupported by the record.[8]  (See Pl.'s Resp. at 7-8, doc. no. 30.)

Here, where Plaintiff plainly failed to establish a prima facie case of conspiracy, and where there is no suggestion that Defendants acted with "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" Plaintiff's Section 1985 claim was groundless.  Griffin, 403 U.S. at 102.  Thus, an award of attorneys' fees is appropriate in this instance.  Barnes Found., 242 F.3d at 163-64 (reversing district

---

[7] Based on prior arguments made in this case, the Court assumes that Plaintiff's counsel was, in fact, referring to Engquist v. Oregon Dep't of Agriculture, 128 S. Ct. 2146, 2151 (2008) (holding that an Equal Protection class-of-one claim is not cognizable in the context of public employment).

[8] In his response to Defendants' motions to dismiss, Plaintiff argued that "Defendants' breach of their fiduciary duties of fair representation renders his civil rights as a public sector, union member void, and meaningless."  (Pl.'s Resp. at 7, doc. no. 30.)  This single sentence cannot be construed as an argument that Defendants conspired against Plaintiff because of his membership in an alleged protected class of union or government employees.  Rather, this argument appears to be another iteration of Plaintiff's breach of contract claim.

court's decision that complaint was not "factually groundless" where there was no "direct evidence of racial animus" and "the items cited were a totally inadequate foundation on which to predicate an inference that racial animus motivated the appellants").

The analysis with respect to Plaintiff's state law claims is slightly more complex.  While the Third Circuit's holding in <u>Jama</u> significantly clarified an area of Section 1988 jurisprudence, which was previously indeterminate,[9] it is still not entirely clear whether this Court is required to consider only whether Plaintiff's state law claims shared a "common core of facts" with Plaintiff's fee-eligible federal claim, or whether this Court must also determine if Plaintiff's state law claims were independently "frivolous, unreasonable, or without foundation."  <u>Compare</u> <u>Jama</u>, 2009 WL 2449604 at *8 (remanding to the district court "to determine whether Jama's RFRA and pendant state negligence claims involved a 'common core of facts' or were based on 'related legal theories'" and instructing that "[i]f the claims are related under this standard, the results on Jama's tort claims may inform the degree of Jama's overall success for the purposes of § 1988"), <u>with</u> <u>Barnes Found.</u>, 242 F.3d at 158

---

[9] <u>See</u> <u>Jama</u>, 2009 WL 2449604 at *6 (noting that "the impact of success on state claims as related to the award of fees under § 1988 has not been squarely addressed by this Court, and has been sparsely litigated elsewhere").

(noting that "a prevailing defendant is entitled to attorney's fees <u>only</u> 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation . . . .'" (quoting <u>Christiansburg Garment Co.</u>, 434 U.S. at 421) (emphasis added)).

Under the circumstances presented here, the Court is not required to adopt one of these two approaches because under either analysis, the Defendants are entitled to an award of attorneys' fees that reflects, to some extent, their success in defending against Plaintiff's state law claims.

As an initial matter, the first hurdle is easily met as Plaintiff's state law claims involve a "common core of facts" with his Section 1985 claim. Indeed, all of Plaintiff's claims stem from the same set of operative facts, i.e., Plaintiff's termination for allegedly leaking confidential information about an undercover narcotics investigation to a local drug dealer, and his subsequent prosecution by local authorities. <u>See</u> 1/4/08 order, doc. no. 36 (noting that Plaintiff's state and federal claims "arise out of the same set of facts"); <u>see also</u> <u>Hensley</u>, 461 U.S. at 435 (noting that "[i]t may well be that cases involving such unrelated claims are unlikely to arise with great frequency"). Thus, the Court may consider Plaintiff's state law claims for the purpose of Defendants' Section 1988 claims. <u>Jama</u>, 2009 WL 2449604 at *8.

Moreover, in the event that <u>Jama</u> requires the Court to

go further, it is clear that at least two of Plaintiff's state law claims against the PBA and the FOP were independently frivolous. First, in Count XI of his amended complaint, Plaintiff sought reimbursement of the legal fees he incurred during his criminal trial, under 53 Pa. C.S. § 639. 53 Pa. C.S. § 639 provides that:

> Any borough, town or township may, through collective bargaining or otherwise, enter into a written agreement by or on behalf of its police officers to pay specified and reasonable legal expenses and attorneys' fees incurred in the defense of any criminal action initiated against any such officer as a result of acts performed by such officer in the scope and course of employment as a police officer. Such agreement and/or payment shall be permitted only in criminal actions wherein the prosecution of charges against such officer has been withdrawn, dismissed or terminated by the entry of a nolle prosequi or by an adjudication of not guilty.

Based on the above statute, Plaintiff sought an award of $35,000 in attorneys' fees, claiming that "a police officer like the plaintiff who is acquitted of criminal charges or earns an adjudication of 'not guilty' is entitled to statutory attorneys fees." (Amended Compl. ¶ 196, doc. no. 14.) On January 4, 2008, the Court dismissed this claim, noting that "53 Pa. C.S. § 639 does not provide a right to attorney's fees, only the authority [of a collective bargaining agent] to bargain for them" (1/4/08 order, doc. no. 36).

The language of the statute is unambiguous, as is the case law interpreting the statute. <u>See, e.g.,</u> <u>Appeal of Borough</u>

of Holidaysburg, 453 A.2d 684, 686 (Pa. Commw. Ct. 1982) (finding that 53 Pa. C.S. § 639 provided a "clear statutory authority for the Borough to engage in collective bargaining on the subject of legal defense expenses"). Thus, Plaintiff's claim that he was entitled to statutory attorneys' fees was groundless.

Second, in Count XII of his amended complaint, Plaintiff sought relief pursuant to the "Pennsylvania Whistleblower Statute," 43 Pa. C.S. § 1424(a). 43 Pa. C.S. § 1424(a) provides that "A person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation."

On January 4, 2008, the Court dismissed this claim, relying on the statute itself and noting that "[a]s plaintiff only cites to pre-termination conduct as the basis for his claim, the 180-day limitations period began to run on the date of his termination." (1/4/08 order, doc. no. 36.) Specifically, Plaintiff was terminated on October 11, 2005 and filed this suit approximately 657 days later, on July 30, 2007. Thus, based on the unambiguous language of the statute, Plaintiff's claim was time-barred and without foundation.

Third, in Count XIII of his amended complaint, Plaintiff averred that by wrongfully terminating his union membership and by "terminating [legal] representation of him,"

- 14 -

the PBA and the FOP breached a contract.  During the litigation, the parties construed Count XIII as alleging a breach of the duty of fair representation under Pennsylvania state law (see doc. no. 51 at 15).  Although Plaintiff did not ultimately prevail on this claim, the Court cannot find that it was "frivolous, unreasonable, or without foundation."  Rather, this claim survived Defendants' motion to dismiss, and was disposed of by the Court after extensive briefing and oral argument on Defendants' motions for summary judgment.  Under these circumstances, the Court will exercise its discretion and decline to award attorneys' fees under Section 1988 for the time spent defending against Count XIII of Plaintiff's amended complaint. See Barnes Found., 242 F.3d at 158 (noting that "'it is important that a . . . court resist the understandable temptation to engage in post hoc reasoning by concluding that because a plaintiff did not ultimately prevail his action must have been unreasonable or without foundation'" (quoting Christiansburg Garment Co., 434 U.S. at 421-22)).

    B.    <u>Lodestar</u>

In calculating the lodestar amount, the Court is mindful that "[t]he district court cannot decrease a fee award based on factors not raised at all by the adverse party." McCutcheon, 506 F.3d at 150 (quoting Rode, 892 F.2d at 1183).

Here, Defendants established a reasonable market rate of $300 per hour by submitting the affidavit of Thomas H. Kohn, Esq., whose "hourly rate for civil rights actions pending in the U.S. District Court for the Eastern District of Pennsylvania is $300 per hour." (See Kohn Aff. ¶ 4, doc. no. 79.)  Plaintiff did not contest this rate.  Moreover, Plaintiff did not contest that defense counsel for the PBA and FOP were entitled to a rate of $225 per hour, and $300 per hour, respectively.[10]  Finally, Plaintiff did not challenge the number of hours expended by defense counsel in defense of Plaintiff's claims.

Under these circumstances, the Court calculated the lodestar amount for the PBA at $11,868.75, reflecting 52.75 hours worked at $225 per hour.  The Court calculated the lodestar amount for the FOP at $7,860, reflecting 26.2 hours worked at $300 per hour.

C.   Reasonableness

Having calculated the appropriate lodestar amount, the Court must now "reduce that amount to account for 'limited success' by" the prevailing party.  McCutcheon, 506 F.3d at 151.  Although Defendants ultimately prevailed on all of Plaintiff's

---

[10]   In fact, during oral argument, Plaintiff's counsel conceded that "I don't know Mr. Blynn's work enough to discuss his hourly rate, but I'm going to agree, right off the bat, with a certain portion of Mr. Goldman's representations.  He's worth the good hourly rate . . . ."  (9/4/09 Hr'g Tr. 15:8-11.)

claims, the Court finds that, in light of the "stringent" standard for awarding attorneys' fees to a prevailing Defendant, it would be inequitable for Defendants to recover attorneys' fees for their defense of Plaintiff's breach of contract claim (Count XIII), which was not "frivolous, unreasonable, or without foundation." Thus, Defendants are entitled to recover fees for their defense of three of Plaintiff's four claims against them.

Still, a blanket reduction of Defendants' requested fee amount by twenty-five percent (25%) would run afoul of the Third Circuit's instruction that "mathematically deducting fees proportional to . . . [a claim] is 'too simplistic and unrealistic.'" Id. (quoting W. Va. Univ. Hosps., Inc. v. Casey, 898 F.2d 357, 363 (3d Cir. 1990)). Instead, the Court will credit both defense counsel's representations that approximately forty percent (40%) of their time, respectively, was spent defending against Plaintiff's breach of contract claim. (See 9/4/09 Hr'g Tr. 6:13-7:6; id. 12:21-13:11.) Thus, the Court will reduce the lodestar amounts by forty percent (40%) for both the PBA and the FOP.

   D.   Fee Award

Defendant PBA shall be awarded fees in the amount of $7,121.25, which represents the lodestar amount, minus the forty percent (40%) that is attributable to its defense against

Plaintiff's breach of contract claim.

Defendant FOP shall be awarded fees in the amount of $4,716, which represents the lodestar amount, minus the forty percent (40%) that is attributable to its defense against Plaintiff's breach of contract claim.

IV. CONCLUSION

For these reasons, Defendants' motions for attorneys' fees shall be granted.  An appropriate order will issue.